## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

LEVERT STEWART,

      Petitioner,

v.                                                                    Case No. 3:20-cv-343-TJC-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

### **ORDER**

### I.   **Status**

Petitioner, Levert Stewart, an inmate of the Florida penal system, initiated this action in the Northern District of Florida by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Doc. 1. The Honorable Hope Thai Cannon, United States Magistrate Judge, transferred this action to this Court. See Doc. 16. Petitioner is proceeding on a Second Amended Petition, Doc. 15 at 1-22, with an attached memorandum, id. at 23-35. He challenges a state court (Duval County, Florida) judgment of conviction for attempted second degree murder and possession of a firearm by a convicted felon. Petitioner is serving a life term of incarceration as a Habitual

Felony Offender. Respondents filed a Response. <u>See</u> Doc. 23 (Resp.).[1] Petitioner filed a reply, <u>see</u> Doc. 34, and a supplemental reply, <u>see</u> Doc. 35. This case is ripe for review.[2]

## II.    <u>Governing Legal Principles</u>

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert.</u> <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

---

[1] Attached to the Response are several exhibits. The Court cites the exhibits as "Resp. Ex."

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318 (11th Cir. 2016) (citing <u>Chavez v. Sec'y Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id.</u> The Court finds that "further factual development" is unnecessary. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1),

(2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Ineffective Assistance of Trial and Appellate Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby

prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003); <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. <u>Strickland</u>, 466 U.S. at 687.

This two-part <u>Strickland</u> standard also governs a claim of ineffective assistance of appellate counsel. <u>Overstreet v. Warden</u>, 811 F.3d 1283, 1287 (11th Cir. 2016). When considering deficient performance by appellate counsel,

> a court must presume counsel's performance was "within the wide range of reasonable professional assistance." <u>Id.</u> at 689, 104 S. Ct. 2052. Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments. <u>See</u> <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264 (11th Cir. 2009). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." <u>Smith v. Robbins</u>, 528 U.S. 259, 288 (2000) (quoting <u>Gray v. Greer</u>, 800 F.2d 644, 646 (7th Cir.1986)); <u>see also</u> <u>Burger v. Kemp</u>, 483 U.S. 776, 784 (1987) (finding no ineffective assistance of counsel when the failure to raise a particular issue had "a sound strategic basis").

Id.; see also Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 915 (11th Cir. 2009) ("failing to raise or adequately pursue [meritless issues on appeal] cannot constitute ineffective assistance of counsel").

To satisfy the prejudice prong of an ineffective assistance of appellate counsel claim, a petitioner must show a reasonable probability that "but for the deficient performance, the outcome of the appeal would have been different." Black v. United States, 373 F.3d 1140, 1142 (11th Cir. 2004); see also Philmore v. McNeil, 575 F.3d 1251, 1264-65 (11th Cir. 2009) (prejudice results only if "the neglected claim would have a reasonable probability of success on appeal"). Also,

> [a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. As such, "[a]ppellate counsel might fail to identify a mediocre or obscure basis for reversal without being ineffective under Strickland." Overstreet, 811 F.3d at 1287 (citation omitted).

For both claims of ineffective assistance of trial counsel and appellate counsel, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir.

2010). Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105. As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105); <u>see also</u> <u>Evans</u>

7

v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

III.   **Analysis**

### A. Ground One

Petitioner argues that his appellate counsel was ineffective for failing to raise on direct appeal a claim that the trial court erred in failing to conduct a Faretta[3] inquiry after Petitioner requested to represent himself.[4] Doc. 15 at 9. According to Petitioner, on April 13, 2009, he made an unequivocal verbal request to invoke his right to self-representation and then made several written requests, but the trial court ignored all those requests. Doc. 35 at 13. Petitioner asserts that had appellate counsel challenged the trial court's failure to conduct a Faretta inquiry, the outcome of his appeal would have been different. Id. at 15-15.

For context, the Court summarizes the relevant record evidence. In May 2008, Petitioner was arrested and soon charged by Information with attempted first degree murder (count one); possession of a firearm by a convicted felon

---

[3] Faretta v. California, 422 U.S. 806 (1975).

[4] Petitioner initially appears to frame Ground One as a claim of trial court error; however, in his memorandum and his supplemental reply, he makes clear that Ground One is a claim of ineffective assistance of appellate counsel. See Doc. 15 at 23; Doc. 35 at 12.

(count two); three counts of child abuse (counts three, four, and five); felony battery (count six); violating an injunction (count seven); aggravated battery upon pregnant female (count eight); and aggravated assault (count nine). Resp. Ex. A at 16; see also State v. Stewart, No. 16-2008-CF-007205 (Fla. 4th Cir. Ct.).[5] The trial court appointed the Public Defender's Office to represent Petitioner, and throughout the trial proceedings Assistant Public Defenders Mr. Ian Weldon and Ms. Melina Buncome[6] represented Petitioner.[7] Resp. Ex. A at 21.

On April 13, 2009, the trial court conducted a pretrial status conference, during which it acknowledged it received a letter from Petitioner requesting that another attorney be appointed because he did not agree with Ms. Buncome's request for a continuance. Resp. Ex. H at 484. During the status conference, Petitioner advised the trial court that he believed Ms. Buncome's representation was prejudicial because she is a woman and the questions she asked him about the facts of his case led him to believe she sympathized with

---

[5] The Court takes judicial notice of Plaintiff's state court docket. See McDowell Bey v. Vega, 588 F. App'x 923, 927 (11th Cir. 2014) (holding that district court did not err in taking judicial notice of the plaintiff's state court docket when dismissing § 1983 action); see also Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) ("[D]ocket sheets are public records of which the court could take judicial notice.").

[6] The pretrial and trial transcripts contain Ms. Buncome's prior name, Ms. Buncome-Williams.

[7] Mr. Weldon and Ms. Buncome alternated as lead counsel during pretrial proceedings and both were present and represented Petitioner during trial.

9

the female victim. Id. at 785. When the trial court asked Ms. Buncome about Petitioner's allegations, she denied exemplifying any bias toward the victim. Id. at 489. The state also advised the trial court that since her appointment, Ms. Buncome had conducted a lot of work on Petitioner's case, deposed ten of the eighteen category A witnesses, and participated in discovery. Id. After considering the attorneys' statements, the trial court denied Petitioner's request to discharge Ms. Buncome and appoint conflict counsel. Id. at 492. The following exchange then occurred:

> THE DEFENDANT: Can I represent myself?
>
> THE COURT: You can represent yourself?
>
> THE DEFENDANT: I'd like to represent myself.
>
> THE COURT: All right. May 21st?
>
> THE CLERK: Yes, Your Honor.
>
> THE COURT: Put this case back on for this Thursday the 16th for a Faretta inquiry, status hearing. If you want to represent yourself you certainly can.
>
> THE DEFENDANT: I should have a paid lawyer.
>
> THE COURT: You what?
>
> THE DEFENDANT: I said until I get a paid lawyer, I should have a paid lawyer but I would like to represent myself.
>
> THE COURT: Yeah, if you retain a lawyer they can always come in.

THE DEFENDANT: All right.

THE COURT: Understand your trial date is set for June 22nd, that's not going to change because you hire a lawyer.

THE DEFENDANT: I understand.

THE COURT: If you hire one, hire one with the understanding the trial is June 22nd. All right. We'll see you on Thursday.

Id. at 492-93. The trial court conducted another status conference on May 21, 2009, but it is unclear if it held a Faretta inquiry. See Stewart, No. 16-2008-CF-007205.

The state court docket shows that on June 3, 2009, Petitioner filed with the trial court a "Motion of Defendant's Waiver of Representation by Counsel." Id. In the motion, Petitioner acknowledged that the trial court advised against self-representation, but requested to waive his right to counsel and proceed pro se under Faretta. Id. In support of his request, Petitioner argued that his counsel refused to file motions that Petitioner requested she file. Id. The next day, June 4, 2009, the trial court conducted a partial hearing on Petitioner's motion to suppress. Resp. Ex. A at 272-322. Petitioner was present for the hearing but he did not request a Faretta inquiry nor did he mention his pending pro se motion to discharge counsel. See generally id. On June 12, 2009, the trial court conducted the second part of the suppression hearing, during which Petitioner offered testimony supporting the motion to suppress. Id. at 395-433.

11

Petitioner again did not request a <u>Faretta</u> inquiry nor did he mention his pending June 3, 2009, pro se motion. <u>See generally</u> <u>id.</u>

On June 18, 2009, the trial court conducted a final pretrial conference, during which defense counsel requested a continuance because she wished to depose two more witnesses before trial. <u>Id.</u> at 324-27. The trial court discussed trial counsel's request with Petitioner, and Petitioner advised that he understood the circumstances of counsel's request and explained that he too wished to depose the two witnesses before trial. <u>Id.</u> at 333. When the trial court asked whether Petitioner had any other issues he wished to discuss, Petitioner advised only that he agreed to the continuance. <u>Id.</u> He did not request a <u>Faretta</u> inquiry, nor did he mention any prior request about self-representation. <u>Id.</u> at 324-27.

The state court docket indicates the trial court conducted monthly pretrial conferences between July 2009 and November 2009. <u>Stewart</u>, No. 16-2008-CF-007205. Only the October 2009, pretrial conference has been transcribed and made part of the record before the Court. <u>See</u> Resp. Ex. A at 344-48. Petitioner was present at that status hearing, but he did not request a <u>Faretta</u> inquiry or ask the trial court to proceed pro se.

On December 7, 2009, before jury selection began on the attempted first degree murder count and the possession of a firearm by a convicted felon count, defense counsel advised the trial court that Petitioner wished to address the

court.[8] Id at 351. Petitioner then advised the trial court that he did not trust trial counsel and she refused to file pretrial motions he asked her to pursue. Id. at 353-55. Ultimately, the trial court found no ineffective assistance or misconduct regarding Petitioner's allegations and proceeded with jury selection. Id. at 363. Petitioner never made a request for a Faretta inquiry, nor did he advise the trial court he wished to proceed pro se. Id. at 351-68.

During jury selection, Petitioner had several outbursts, accused the bailiff of giving him a poisonous sandwich during lunch, and poured a cup of water down the front of his chest and pants. Resp Ex. B at 75, 119-20, 125. The trial court addressed Petitioner several times during these events, but again, he never requested a Faretta inquiry. Likewise, once the trial began, Petitioner claimed he was incompetent, exclaimed that his leg hurt and requested to be returned to jail, and ultimately forced officials to take him to the hospital after using a pencil to perpetrate a self-inflicted wound. Resp. Ex. D at 7-15. The trial court addressed Petitioner's actions and conducted colloquies with Petitioner. It determined him to be competent to proceed, finding that his sudden claim of incompetence was a delay tactic and in far contrast to Petitioner's actions and statements to the trial court in all the appearances preceding trial. Id. at 15. During these events, Petitioner never requested a Faretta inquiry.

---

[8] The state only tried Petitioner on counts one and two, and upon defense counsel's request, the trial court agreed to a bifuricated trial on those two counts.

The jury found Petitioner guilty of the lesser included offense of attempted second degree murder with a finding that Petitioner discharged a firearm during the commission of the offense. Id. at 460. After further testimony and considering evidence from the state, the jury then found Petitioner guilty of possession of a firearm by a convicted felon.[9] Id. at 474. At sentencing, Petitioner addressed the trial court, but he never mentioned a request to proceed pro se or a Faretta inquiry. Resp. Ex. A at 387-94. The trial court adjudicated Petitioner as an HFO and sentenced him on count one to a life term of incarceration with a twenty-year minimum mandatory, and a thirty-year term with a three-year minimum mandatory as to count two. Resp. Ex. A at 223-29.

Petitioner, with help from appellate counsel, sought a direct appeal. He raised two issues: (1) the trial court erred in denying Petitioner's motion to suppress, and (2) Petitioner's rights were violated when the sentencing court rather than the jury made the finding that Petitioner qualified as an HFO warranting the imposition of an enhanced sentence. See generally Resp. Ex. E. The state filed an answer brief, Resp. Ex. F, and the First District Court of Appeal per curiam affirmed Petitioner judgment and sentences without a written opinion, Resp Ex. G.

---

[9] The state nol prossed the other counts in the Information. Resp. Ex. A at 386.

Petitioner now argues that appellate counsel was ineffective for failing raise a claim on direct appeal that the trial court erred in not conducting a <u>Faretta</u> inquiry. Doc. 15 at 9. Petitioner raised this claim when he filed with the First DCA a petition under Florida Rule of Appellate Procedure 9.141. Resp. Ex. N at 6-16. The First DCA denied the claim on the merits. Resp. Ex. O. As such, the Court addresses the issue in accordance with the deferential standard for federal court review of state court adjudications.

The obligation to conduct a <u>Faretta</u> hearing, at which the trial court advises a defendant of the dangers and disadvantages of self-representation, is triggered by the defendant's "clear and unequivocal" assertion of a desire to represent himself. <u>See</u> <u>Cross v. United States</u>, 893 F.2d 1287, 1290 (11th Cir. 1990) ("In recognition of the thin line that a district court must traverse in evaluating demands to proceed pro se, and the knowledge that shrewd litigants can exploit this difficult constitutional area by making ambiguous self-representation claims to inject error into the record, this Court has required an individual to clearly and unequivocally assert the desire to represent himself."); <u>Dorman v. Wainwright</u>, 798 F.2d 1358, 1366 (11th Cir. 1986) ("Insofar as the desire to proceed pro se is concerned, [a] petitioner must do no more than state his request, either orally or in writing, unambiguously to the court so that no reasonable person can say that the request [to proceed pro se] was not made."). The only record evidence supporting Petitioner's assertion that he made a

request for a <u>Faretta</u> inquiry are his statements at the April 13, 2009, pretrial hearing, and his June 3, 2009, pro se motion. Resp. Ex. A at 259-71; <u>see</u> <u>Stewart</u>, No. 16-2008-CF-007205. But Petitioner's April 13, 2009, conditional request was not sufficiently clear and unambiguous as to mandate the purviews of <u>Faretta</u>. Also, after Petitioner filed his June 3, 2009, pro se motion, the trial court conducted several pretrial conferences, and Petitioner never mentioned his pending June 3, 2009, motion nor requested a <u>Faretta</u> inquiry. <u>See generally</u> <u>Stewart</u>, No. 16-2008-CF-007205.

To that end, even assuming Petitioner's April 13, 2009, statements and his June 3, 2009, motion should have prompted the trial court to conduct a <u>Faretta</u> inquiry, "[a] defendant can waive his <u>Faretta</u> rights." <u>McKaskle v.</u> <u>Wiggins</u>, 465 U.S. 168, 182 (1984). Notably, "[e]ven if defendant requests to represent himself, . . . the right may be waived through defendant's subsequent conduct indicating he is vacillating on the issue or has abandoned his request all together." <u>Brown v. Wainwright</u>, 665 F.2d 607, 611 (5th Cir. 1982); <u>see also</u> <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1296 (11th Cir. 2011). Petitioner's subsequent acquiescence and acceptance of assistance from defense counsel constituted a waiver of his <u>Faretta</u> rights and/or abandonment of any invocation of his right to represent himself. Thus, Petitioner cannot demonstrate that but for appellate counsel's alleged error, the outcome of his appeal would have been different.

For these reasons, the Court concludes that the state court's adjudication of this claim was neither contrary to nor an unreasonable application of clearly established federal law, and it is not based on an unreasonable determination of the facts considering the evidence presented in the state court proceeding. See 28 U.S.C. § 2254(d); Gill, 633 F.3d at 1296 (holding state court's adjudication of Faretta claim entitled to deference because invocation of right to self-representation was equivocal and the petitioner's conduct suggested a waiver of his Faretta rights). Ground One is denied.

**B. Ground Two**

Petitioner argues that his speedy trial rights were violated. See Doc. 15 at 11. Although difficult to decipher, he appears to raise this issue through three sub-claims. First, he alleges that his trial counsel, Mr. Weldon, acted ineffectively for failing to adequately explain the details of his speedy trial rights before waiving those rights and moving for a continuance in October 2008; and had trial counsel properly informed Petitioner, Petitioner would not have waived speedy trial and the charges would have been discharged. Id. at 25. Second, he argues that his court-appointed postconviction counsel, Mr. Donald Mairs, was ineffective for failing to adequately argue the above ineffective assistance of trial counsel claim during the evidentiary hearing on his Florida Rule of Criminal Procedure 3.850 motion. Id. Third, Petitioner appears to argue in his supplemental reply that his appellate counsel was

17

ineffective for failing to raise on direct appeal a claim that Petitioner's trial counsel was ineffective for failing to invoke Petitioner's speedy trial rights and prevent his prosecution. Doc. 35 at 21. The Court addresses these sub-claims in turn.

### i. Trial Counsel and Postconviction Counsel

In ground five of his Rule 3.850 motion, Petitioner raised a claim that trial counsel was ineffective for failing to invoke Petitioner's speedy trial rights or adequately explain the consequences of waiving those rights when asking for a continuance. Resp. Ex. H at 9. The trial court granted an evidentiary hearing on the claim, and appointed Mr. Mairs to represent Petitioner at the hearing. Id. at 286; see also Stewart, No. 16-2008-CF-7205. At the evidentiary hearing, the trial court considered testimony from Petitioner, Mr. Weldon, and Ms. Buncome. Resp. Ex. H at 581. The trial court later denied the claim:

> Defendant avers counsel was ineffective for failing to explain the details of speedy trial to Defendant prior to moving for a continuance. Defendant states he did not sign a waiver of his speedy trial rights and was not aware that a continuance would, in effect, waive those rights. Defendant asserts that, had counsel not waived Defendant's speedy trial rights, Defendant's case would not have gone to trial within 175 days of his arrest, and Defendant's case would have to be discharged.

> The federal and state constitutions guarantee a right to speedy trial for an accused.[] "[E]very person charged with a crime shall be brought to trial within 90 days of arrest if the crime charged is a misdemeanor, or

18

within 175 days of arrest if the crime charged is a felony." Fla. R. Crim. P. 3.191. The rule requires the State to bring the defendant to trial within 175 days; however, the remedy for a violation is not an automatic discharge. See State v. Naveira, 873 So. 2d 300, 305 (Fla. 2004). "[A]t any time after the expiration of the prescribed time period, the defendant may file a separate pleading entitled 'Notice of Expiration of Speedy Trial Time,' and serve a copy on the prosecuting authority." Fla. R. Crim. P. 3.191(p)(2). A trial court shall hold a hearing on the notice no later than five days from the date of the filing of the notice. Fla. R. Crim. P. 3.191(p)(3). The rule further provides that the defendant be brought to trial within ten days unless one of the reasons set forth in subdivision (j) exists.[] Id. Only when the defendant is not brought to trial within ten days and none of the reasons set forth in subdivision (j) exist may the defendant be "forever discharged" of the crime. Id.

Any action causing a delay in the prosecution that is attributable to the defendant, however, acts as a waiver of that right. State v. Nelson, 26 So. 3d 570, 574 (Fla. 2010). When a defense motion for continuance made prior to the expiration of the speedy trial period is granted, waiver will be presumed "because this action causes a delay in the prosecution that is attributable to the defendant." Id. at 576. This is true even where the motion for continuance is made over the defendant's objection or without his consent. McKenzie v. State, 29 So. 3d 272, 282 (Fla. 2010).

Defendant was arrested on May 15, 2008. On October 16, 2008, defense counsel made an oral motion for continuance, which the trial court granted. Therefore, because this request for continuance was made prior to the expiration of the 175 days, it acted as a waiver of Defendant's speedy trial rights.

[At the evidentiary hearing,] Weldon testified that trial was set for October 20, so he moved for a

continuance on October 16, since the victim showed up for trial, despite not showing up previously, including for her deposition. Weldon testified the victim had not been deposed, and he felt the trial preparation was more important than requiring a speedy trial when the victim in the attempted murder case had not yet been deposed. Weldon testified he believed this was in his client's best interest. This Court finds counsel's decision entirely reasonable under the circumstances and finds no deficiency.

Moreover, this Court finds Defendant has not sufficiently proven prejudice. At the evidentiary hearing, Defendant stated he believed his charges would have been discharged because Weldon stopped working on the case after making the continuance. Even if this were true, it does not mean the State would not have been prepared to prove its case at trial. Rather at minimum, the State had gotten the victim to show up in support of its case. Further, as indicated above, failure to bring a defendant to trial within 175 days of arrest does not automatically result in the discharge of his charges. Rather, there is a recapture period in which the State may still have prosecute[d] the charges. Accordingly, this Court finds Defendant is not entitled to relief on this Ground.

Resp. Ex. H at 300-02 (record citations omitted). Petitioner appealed, and the trial court appointed Mr. Charles Fletcher to represent Petitioner during his postconviction appeal. Id. at 569. After filing an initial brief, the First DCA granted Mr. Fletcher's request to withdraw, and Petitioner filed a pro se initial brief. See Stewart v. Florida, No. 1D18-0921 (Fla. 1st DCA); see also Resp. Ex. I. In his pro se brief, Petitioner argued that Mr. Mairs acted ineffectively during the evidentiary hearing because he failed to adequately argue or present

witnesses to support Petitioner's ineffective assistance of trial counsel claim about his speedy trial rights. Id. at 20. The state filed an answer brief arguing that the trial court did not err in denying this ineffective assistance of trial counsel claim, and to the extent that Petitioner asserted his postconviction counsel was ineffective, that claim lacked merit as "Florida law does not recognize a right to postconviction counsel." Resp. Ex. J at 17. The First DCA per curiam affirmed the trial court's order without a written opinion. Resp. Ex. K. The Court addresses Petitioner's ineffective assistance of trial counsel and postconviction counsel claims in accordance with the deferential standard for federal court review of state court adjudications.

As to his ineffective assistance of trial counsel claim, the record shows that on October 16, 2008, during Petitioner's initial final pretrial, Mr. Weldon moved to continue. See Stewart, No. 16-2008-CF-07205. At the evidentiary hearing, Mr. Weldon testified that he requested the continuance over Petitioner's objection because he had not yet deposed the victim who had agreed to appear for the October 20, 2008, trial date.[10] Resp. Ex. H at 610-11. According to Mr. Weldon, he believed preparation for trial was in Petitioner's best interest and more important than Petitioner's speedy trial and made the strategic decision to request the continuance. Id. at 610. And the Court's review of the

---

[10] The victim was Petitioner's wife who often refused to cooperate with the prosecution.

evidence ultimately presented at trial, supports Mr. Weldon's actions. Indeed, the crimes occurred in a public parking lot in Jacksonville Beach, Florida; during the daytime hours; and several eyewitnesses testified that they saw Petitioner get out of a vehicle with a firearm before firing several shots at the victim who was sitting in the driver's seat. See generally Resp. Ex. D. Some of those shots struck the victim and a few eyewitnesses then helped the victim and called 911. Thus, Petitioner cannot show that but for trial counsel's alleged errors, the state would have discharged the charges. Based on Mr. Weldon's evidentiary hearing testimony and upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of Strickland, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. See 28 U.S.C. § 2254(d).

As to any claim that postconviction counsel acted ineffectively during the evidentiary hearing, federal law also provides that there is no constitutional right to counsel in state postconviction proceedings. See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); Jones v. Crosby, 137 F.3d 1279, 1280 (11th Cir. 1998). Petitioner has thus failed to show that he is in custody in violation of the Constitution or laws of the United States; and he is not entitled to federal habeas relief on that issue.

### ii. Appellate Counsel

Finally, to the extent that Petitioner claims in his supplemental reply that his appellate counsel was ineffective for failing to raise on direct appeal a claim about the violation of Petitioner's speedy trial rights, arguments raised for the first time in a reply brief are not properly before a reviewing court. See Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005) (citations omitted). Further, this claim was never presented to the state court, and thus it is unexhausted and procedurally barred. If Petitioner seeks to argue that the Court should excuse the procedural bar based on the purview of Martinez, that argument fails. See Doc. 35 at 21. "Martinez [does] not extend or apply to excuse procedurally defaulted claims of ineffective assistance of appellate counsel." Moser v. Sec'y, Dep't of Corr., 803 F. App'x 382, 383 (11th Cir. 2020). Thus, Ground Two is denied.

### C. Ground Three

Petitioner argues that his trial counsel was ineffective for failing to challenge the legality of his HFO designation and life sentence for count one – attempted second degree murder. See Doc. 15 at 13.[11] In support of this argument, Petitioner alleges two sub-claims. See id. at 13; Doc. 35 at 23-26. First, Petitioner argues that his trial counsel failed to object when the judge,

---

[11] In his supplemental reply, Petitioner clarifies that he is raising an ineffective assistance of trial counsel claim. See Doc. 35 at 23.

rather than the jury, made the necessary findings to impose the HFO sentence. Doc. 15 at 13. Second, Petitioner appears to argue that his trial counsel was ineffective for failing to object to the trial court improperly reclassifying his conviction for count one under § 775.087, Florida Statutes, where the use of a firearm is an essential element of attempted second degree murder. Doc. 15 at 13; Doc. 35 at 23.

Petitioner raised his first sub-claim in ground seven of his Rule 3.850 motion. Resp. Ex. H at 135. The trial court denied the claim:

> Defendant alleges counsel was ineffective when he failed to object to the judge making the necessary findings to impose an HFO sentence. Specifically, Defendant maintains he was denied his right to a trial by jury when the judge, not the jury, made findings necessary to increase his sentence.
>
> This Court finds Defendant's arguments are essentially centered on the contention that any fact used to enhance a sentence in excess of the standard guidelines must be submitted to, and found by, a jury. This is the very rationale expressed in Apprendi v. New Jersey, 530 U.S. 466 (2000), in that the statute under which that defendant was sentenced, improperly removed from the jury findings of fact regarding the offense at issue, which could result in a sentence greater than the maximum for the offense. Apprendi, 530 U.S. at 466. Florida's HFO statute is a sentencing statute based solely upon a defendant's status as a recidivist felon. See § 775.084, Fla. Stat. (2008). Apprendi specifically reasoned that recidivism does not relate to the commission of the offense itself and is, therefore, not a jury question. Apprendi, 530 U.S. at 488-89, 490 (concluding "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a

crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). Incidentally, determining whether a defendant qualifies for an HFO sentence is "independent of the question of guilt in the underlying substantive offense" and does not require submission to the jury. Wright v. State, 780 So. 2d 216, 217 (Fla. 5th DCA 2001).

This argument has been repeatedly rejected by Florida courts. See Dinkens v. State, 976 So. 2d 660, 662 (Fla. 1st DCA 2008); Jones v. State, 791 So. 2d 580, 581 (Fla. 1st DCA 2001); Saldo v. State, 789 So. 2d 1150, 1151 (Fla. 3d DCA 2001); Gordon v. State, 787 So. 2d 892, 893-94 (Fla. 4th DCA 2001); Wright, 780 So. 2d at 216. Moreover, in designating Defendant a[n] HFO, the trial court only considered Defendant's prior convictions, showing he is a recidivist felon. Counsel, therefore, cannot be deemed ineffective for failing to make a meritless objection. See Schoenwetter v. State, 46 So. 3d 535, 546 (Fla. 2010) (finding counsel cannot be deemed ineffective for failing to make a meritless objection). Accordingly, Defendant is not entitled to relief on this ground. Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

Resp. Ex. H at 304-05 (record citations omitted). Petitioner appealed the trial court's denial, and in his pro se brief on appeal, Petitioner argued that the trial court erred in reclassifying his conviction for count one to a first degree felony under § 775.087 "when a firearm is already an essential element of the crime." Resp. Ex. I at 15. In its answer brief, the state argued that the trial court did not err in denying ground seven. Resp. Ex. J at 3. It further argued that while

Petitioner's reclassification argument was not cognizable in a Rule 3.850 postconviction motion, it was without merit because "[e]ven though [Petitioner] used a firearm in the commission of his offens[e], a firearm or weapon is not an essential element to the underlying charge of attempted murder. See Section 782.04, Florida Statutes." Id. at 12. The First DCA per curiam affirmed the denial without a written opinion. Resp. Ex. K.

The Court addresses these claims in accordance with the deferential standard for federal court review of state court adjudications. In doing so, the Court finds persuasive the trial court's orders denying Petitioner's Florida Rule of Criminal Procedure 3.800(a) motions containing allegations challenging the legality of Petitioner's sentence for count one. In one order denying a Rule 3.800(a) motion, the trial court found:

> Defendant was charged by Information dated June 4, 2008 with Attempted First Degree Murder in Count 1 (a first degree felony), Possession of a Firearm by a Convicted Felon in Count 2 (a second degree felony), and several other counts.[] Specifically, as to Count 1, the Information alleged that during the commission of the crime, the Defendant did "display, carry, use, threaten to use, or attempt to use a firearm, and did actually possess and discharge a firearm," contrary to the provisions of 775.087(2)(a)2, among others. On December 9, 2009, the Defendant was found guilty after [a] jury trial of Attempted Second Degree Murder in Count 1 (a lesser-included offense). The jury further found that the Defendant discharged a firearm during the commission of the Attempted Second Degree Murder. The Defendant was also found guilty as charged of Possession of a Firearm by a Convicted

Felon, with actual possession of a firearm, in Count 2. On February 16, 2010, the Court adjudicated the Defendant guilty on both counts and sentenced him as an Habitual Felony Offender to: life in prison with a 20-year mandatory minimum for discharge of a firearm as to Count 1, and thirty years in prison with a 3-year mandatory minimum for possession of a firearm as to Count 2.

. . . .

In the Motion, Defendant alleges that his life sentence with a 20-year mandatory minimum as to Count 1 is illegal, based on the following grounds: 1) as a reclassified first degree felony,[FN2] the maximum sentence on Count 1 was thirty years; and 2) the Information did not allege that the discharge of the firearm caused great bodily harm, pursuant to 775.087(2)(a)3.

As to Ground 1, Defendant claims that because Count 1 was a 1st degree felony, the maximum sentence the Court could have imposed was thirty years. That would be correct, if the Defendant was not also a Habitual Felony Offender ("HFO"). The Defendant ignores that fact that the Court sentenced him as an HFO pursuant to Florida Statute 775.084. The Defendant was aware of his status as an HFO and the State's intent to have him sentenced to life in prison, as the Defendant was hand served by the State on June 5, 2008 with the required Notice of Intent to Classify the Defendant as a[] Habitual Felony Offender. As an HFO, the Court could permissibly and legally sentence Defendant to life in prison. Florida Statute 775.084(4)(a)1 provides that "[t]he court . . . may sentence the habitual felony offender as follows: . . . In the case of a life felony or a <u>felony of the first degree</u>, for life." (emphasis added). Thus, Defendant's life sentence for the first degree felony in Count 1 is legal.

27

As for Ground 2, the Defendant is correct that the State did not allege in the Information that the discharge of the firearm caused great bodily harm, pursuant to 775.087(2)(a)3. Moreover, the jury was not asked to and did not make such a finding on the verdict form. However, the Defendant is incorrect in that the absence of such language does not invalidate the sentence in Count 1. Such language is not required if the State is not seeking to sentence the Defendant under the 10/20/Life provisions which impose a mandatory minimum term of 25 years to life in prison. In this case, the State was NOT seeking such a mandatory minimum. Instead, the State sought and the Defendant was sentenced to a 20-year mandatory minimum under the 10/20/Life provisions for discharging a firearm, specifically 775.087(2)(a)2. The Defendant was NOT sentenced to a mandatory life sentence, as he claims in the Motion. Therefore, the State was not required to add the language alleging great bodily harm, as Defendant suggests. As such, Defendant's sentence in Count 1, which includes a 20-year mandatory minimum, is legal.

[FN2] Defendant acknowledges that Attempted Second Degree Murder is a second degree felony, but in this matter was reclassified as a first degree felony. Florida Statute 775.087 provides for the reclassification or increase in degrees of crimes if during the commission of the crime a defendant did "display, carry, use, threaten to use, or attempt to use a firearm." In this matter, the Information included this reclassification language, and the jury specially found that the Defendant indeed used and discharged a firearm during the commission of the offense, contrary to the provisions of 775.087(2)(a)2.

Resp. Ex. Q at 16-18 (record citations omitted). Likewise, in another order, the trial court found the "use or possession of a firearm is not an essential element of attempted second degree murder." Resp. Ex. W at 26 (citing Connolly v. State,

28

172 So. 3d 893 (Fla. 3d DCA 2015) ("Use or possession of a firearm . . . is not an essential element of second degree murder . . . .")). On this record, the Court cannot find that Petitioner's sentence for count one is illegal. And thus, upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claims was neither contrary to nor an unreasonable application federal law, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. See 28 U.S.C. § 2254(d). Further, to the extent that any aspect of these ineffective assistance of trial counsel claims were not presented to the state court and not entitled to deference, the Court finds that Petitioner has failed to demonstrate that but for trial counsel's alleged errors, the outcome would have been different. Ground Three is denied.

### D. Ground Four

Although difficult to decipher, Petitioner appears to raise three sub-claims. First, Petitioner asserts that his trial attorney was ineffective for failing to object to the judge's responses to the jury's questions submitted during deliberations. Doc. 15 at 15. Second, Petitioner argues that his trial counsel was ineffective for failing to request that the trial court instruct the jury on only attempted first degree murder. Id. at 29. And third, he claims his appellate counsel was ineffective for failing to raise on direct appeal a claim that trial counsel was ineffective for failing to request that the trial court instruct the jury

on only attempted first degree murder. Id. at 32. The Court addresses each sub-claim in turn.

>    *i. First Sub-Claim*

In his Rule 3.850 motion, Petitioner raised two grounds challenging trial counsel's conduct during the trial court's consideration of the jury questions. Resp. Ex. H at 226. The trial court denied the arguments:

> Defendant maintains counsel was ineffective for failing to aid the trial court in formulating responses to the jury's questions during deliberations. The jury asked two questions. First, the jury asked, "Are we allowed to consider our impression of [Defendant's] mental status?" Second, the jury asked, "can we see the transcripts of Lavert's [sic] interview?" After the jury submitted the questions, the judge suggested answering them "no and no." The State agreed with the answers, stating, "neither one of them are in evidence." Defense counsel made no statements, and the judge advised the jury as discussed. After advising the jury, the judge asked if there were any objections to his instruction, to which the State replied, "no." The record reflects no response from defense counsel.

> 1. <u>First Juror Question</u>

> As to the first question, Defendant avers counsel should have suggested the trial judge inquire whether the jury was concerned with Defendant's "mental status" as it relates to Defendant's credibility, intent, or competency. Defendant makes alternative arguments based on what the jury was possibly referencing.

> If the jury was referring to Defendant's credibility or reliability, Defendant suggests counsel should have asked the judge to reinstruct the jury on

30

weighing the evidence, on evaluating the DVD of Defendant's interview, or "specifically informing the jury that [the DVD of Defendant's interview], and its contents are evidence from which they may find a reasonable doubt as to Defendant's guilt[] and upon which they may otherwise rely in deciding the case."

The jury was provided a copy of the jury instructions to use during deliberations, which contained the instruction on weighing the evidence. Thus, there can be no prejudice in the trial court not reinstructing them on this issue when they had the instruction with them during deliberations. As for informing the jury specifically regarding the DVD of his interview, such an instruction on a specific piece of evidence would have been improper for the trial court to give, and counsel, therefore, cannot be ineffective for failing to request such an instruction. See Schoenwetter, 46 So. 3d at 546 ("Counsel cannot be deemed ineffective for failing to make a meritless argument."). Moreover, since such a request would have been denied, there is no reasonable probability the outcome would have changed had counsel requested such instructions.

If the jury was referring to Defendant's intent to commit the crime, Defendant maintains counsel should have requested the trial court instruct the jury they may "consider Defendant's conduct, demeanor, or other observable fact apparent from [the DVD of Defendant's interview] because it is evidence in the case which they may consider in deciding whether Defendant acted "intentional[ly]" or "with intent." Again, this Court notes an instruction on a specific piece of evidence would have been improper, and counsel cannot be deemed ineffective for failing to make a meritless argument. Moreover, in the set of jury instructions sent back with the jury, there were instructions on the intent necessary for each offense and lesser included offense. Therefore, this Court finds the jury was properly instructed on the intent of all crimes.

If the jury was referring to Defendant's competency, Defendant alleges counsel should have requested the trial judge inform the jury "they may only consider such matters only to the extent that they are discernable from observing [the DVD of Defendant's interview]." Competence, however, is an issue for a judge to determine, not a jury. Fla. R. Crim. P. 3.210-3.212. Therefore, the trial court's response to the jury was appropriate. Additionally, the defense had not presented any evidence as to Defendant's mental status for the jury to consider and it would have likewise been inappropriate for that reason. Moreover, in the instructions given to the jury, there was an instruction on "Defendant's Statements," in which it instructed the jury of the following:

> A statement claimed to have been made by the defendant outside of court has been placed before you. Such a statement should always be considered with caution and be weighed with great care to make certain it was freely and voluntarily made.

> Therefore, you must determine from the evidence that the defendant's alleged statement was knowingly, voluntarily and freely made . . . .

> If you conclude the defendant's out of court statement was not freely and voluntarily made, you should disregard it.

Therefore, this Court finds no deficiency on the part of counsel and no prejudice as a result of counsel's actions. Accordingly, Ground Eleven is denied as to counsel's actions regarding the first juror question.

2. Second Juror Question

Defendant maintains counsel should have advised the court to tell the jury that while they could not have the transcript of the Defendant's interview because that was not in evidence, they could have all or a part of the DVD played back to them as many times as they wished. Alternatively, Defendant states counsel should have suggested that the jury be provided a means to view the video in the jury room.

Florida Rule of Criminal Procedure 3.410(b) states that if the jury requests transcripts of testimony, the judge should deny the request for transcripts, but inform the jurors that they may, however, request to have any testimony read or played back, which in turn "may or may not be granted at the court's discretion." This Court finds no deficiency on the part of counsel in this regard. At the evidentiary hearing, both counsel and the State indicated that the jury was given a laptop to watch the DVD again if they so desired. Thus, while the trial court did not offer a playback of the testimony in court, the jurors had the ability to re-watch the interview DVD. Moreover, since the jury had the means in which to watch the interview during deliberations, there can be no prejudice from the trial judge denying access to transcripts and counsel agreeing to that response.

As to Defendant's alternative argument that the jurors should have been given the means to watch the DVD in the jury room, this Court finds counsel cannot be deemed deficient as this was done in this case. Therefore, counsel cannot be deemed ineffective for failing to make that meritless argument. Defendant is, accordingly, not entitled to relief on this basis.

3. Count Two Prejudice

Lastly, Defendant suggests the alleged deficiencies above prejudiced him on Count Two as well because the jury was unable to review the DVD of his interview, which included his statements that he only

33

had the gun "because he took it from Lavonta Stewart to prevent her from shooting him." This Court finds the jury was properly instructed on Possession of a Fireman by a Convicted Felon. Those instructions do not allow for acquittal even if Defendant can give a reason as to why he had the gun. The jury needed only to find that the gun was in Defendant's care, custody, possession, or control, which Defendant does not deny. Thus, this Court finds no deficiency on the part of counsel as outlined above, nor any prejudice as is alleged as to Count Two. Accordingly, Defendant is not entitled to relief.

Resp. Ex. H at 307-11 (record citations omitted). When addressing a similar ground, the trial court explained:

Defendant asserts counsel performed deficiently and prejudiced his case when he failed to object to the judge's decision to tell the jurors they could not consider Defendant's "mental status." During jury deliberations, the jury sent two questions to the judge, one of which read: "[a]re we allowed to consider our impression of [Defendant's] mental status?" In response, the judge simply informed the jury, "[t]he answer is no." Defense counsel did not state any opinion on the matter.

As stated in the "Rules for Deliberation" explained to the jurors and included in the standard jury instructions: the "case must be decided only upon the evidence that you have heard from the testimony of the witnesses and have seen in the form of the exhibits in evidence and these instructions." Fla. Std. Jury Instr. (Crim.) 3.10[.] In the instant case, there was no direct evidence to show Defendant's "mental status." The trial judge's response was proper, and any objection would have been meritless. Counsel, therefore, cannot be held ineffective, and Defendant is not entitled to relief. See Schoenwetter, 46 So. 3d at 546; Hitchcock, 991 So. 2d at 361.

34

Resp. Ex. H at 300 (record citations omitted). Petitioner appealed the trial court's denial, Resp. Ex. I at 30, and the First DCA per curiam affirmed the denial without a written opinion, Resp. Ex. K.

The Court addresses the sub-claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). This sub-claim is denied.

### ii. Second and Third Sub-Claims

As to Petitioner's second and third sub-claims – that his trial counsel was ineffective for failing to request that the trial court instruct the jury on only attempted first degree murder. Doc. 15 at 29; and that his appellate counsel was ineffective for failing to raise on direct appeal a claim that trial counsel was ineffective for failing to request that the trial court instruct the jury on only attempted first degree murder, <u>id.</u> at 32 – Petitioner does not point to a particular motion or other record evidence showing that he ever raised these arguments in state court. <u>See generally</u> Doc. 15. Petitioner also does not reference these two sub-claims in his reply or supplemental reply. <u>See</u> Docs. 34, 35 at 27-30. And Respondents do not mention these two sub-claims in their

Response. <u>See</u> Resp. at 38-40. Thus, the Court finds the second and third sub-claims of this Ground are unexhausted and procedurally barred and Petitioner fails to show cause for or prejudice to excuse the default. He also does not argue that a failure to address these issues will result in a miscarriage of justice. Thus, Ground Four is denied.

## E. Ground Five

Petitioner argues he has received newly discovered evidence that his postconviction appellate counsel, Mr. Fletcher, failed to advise him that "all state-level appeals and collateral attacks on any judgment must be complete within two years from the date of the appeal in non-capital cases." Doc. 15 at 18.

Petitioner's claim here is based on errors committed during his postconviction appeal and proceedings, which is not a cognizable claim for federal habeas relief.[12] <u>See</u> <u>Quince v. Crosby</u>, 360 F.3d 1259, 1262 (11th Cir. 2004) ("[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."). Indeed, Petitioner does not allege that

---

[12] Respondents read Ground Five as a claim that Petitioner's appellate counsel acted ineffectively during Petitioner's direct appeal. Resp. at 40-43. In his supplemental reply, however, Petitioner clarifies that he is challenging the actions his postconviction appellate counsel took during the appeal of the trial court's order denying his Rule 3.850 motion. Doc. 35 at 31.

he is in custody in violation of the Constitution or laws of the United States; and thus this issue is not properly before the Court. Ground Five is denied.

**F. Ground Six**

Petitioner argues that his appellate counsel was ineffective for failing to file a Florida Rule of Criminal Procedure 3.800(b)(2) motion to preserve for direct appeal two sentencing errors for count one. Doc. 15 at 19. According to Petitioner, appellate counsel should have preserved and argued on direct appeal the erroneous "imposition of a[n] HFO sentence based on the improper enhancement of a second[]degree felony, and where the second[]degree attempted murder [sentence] exceeded that authorized by law for a second[]degree felony." Id.

Petitioner admits that he did not present this ineffective assistance of appellate counsel claim to the state court and thus it is unexhausted and procedurally barred. Doc. 35 at 32. But he attempts to overcome any procedural bar by arguing his Rule 3.800(a) motion filed in state court adequately challenged the legality of his sentence on count one and the Court should consider the issue on the merits. Id.

Assuming, for purposes of this Order, that this claim is exhausted and properly before the Court, it still lacks merit for the reasons discussed in Ground Three. Notably, the jury found Petitioner guilty of attempted second degree murder with a further finding that Petitioner actually possessed and

discharged a firearm during the commission of the crime. The jury's finding that Petitioner possessed a firearm during the commission of the offense reclassified the second degree felony of attempt to a first degree felony. See § 775.087(1)(b), Fla. Stat. During sentencing, the trial court properly adjudicated Petitioner as an HFO, which permitted the trial court to sentence Petitioner to a life term of incarceration for the first degree felony conviction. See § 775.084 (4)(a)1, Fla. Stat. Petitioner's sentence for count one is legal. Thus, he cannot show that but for appellate counsel's alleged errors, the outcome of his trial would have been different. Ground Six is denied.

Accordingly, it is

**ORDERED AND ADJUDGED**:

1.     The Second Amended Petition (Doc. 15) is **DENIED** and this case is **DISMISSED with prejudice**.

2.     The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.     If Petitioner appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending

motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[13]

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of June, 2023.



TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:     Levert Stewart, #J17573
       Holly Noel Simcox, Esq.

---

[13] The Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.